My name is Anne Traum. I'm appearing on behalf of Mr. Howard. I would like to reserve two minutes for rebuttal and I'll try to keep my eye on the clock. Okay, just keep an eye on the clock. Yeah. I've briefed a number of issues. I plan to focus on the audio tapes issue. Mr. Howard claims that he was convicted on the basis of an impermissibly suggestive voice identification. The audio tapes of jailhouse phone calls attributed to Mr. Howard were the centerpiece of the government's case. Voice identification is closely akin to visual ID and the same standard applies. The first question is, was the ID process impermissibly suggestive? And second, if so, was the ID nonetheless reliable? If anything, the data shows that people are much worse at voice identification and so the risk of suggestion is enhanced. The ID in this case was essentially like a one-on-one photo show-up or photo ID where the officer says, here's the guy we think did it. Is he the guy? At the hearing, two on the admissibility of the tapes, two witnesses testified. The first was Kevin Strobeck. He's the detention intelligence officer in the jails and he collected the calls. The second was Joe Kelly, the detective on the case, and he identified the voice. The process was like this. Kelly asked Strobeck to, quote, find some calls that were related to Howard. Strobeck then taped some 90 calls, but he can't tell the court how he identified those calls. Then Strobeck gives the tape back to Kelly, excuse me, telling him that these are  the calls that were related to Howard. Well, in order to prevail on that issue, you have to demonstrate, do you not, that the evidence presented by the prosecution, not that it wasn't wonderful, but that it was so bad that they couldn't even make the prima facie case that's necessary to get beyond the evidentiary ruling threshold so that they put in this evidence from the officer who says, Kelly was it? He says, I know this guy's voice, I know his patterns, I know lots of things about him. I can identify his voice from my experience. We have the other fellow who says, here's how I culled them, and I don't know exactly what process I used, but I do have processes that I used to cull them, and I did use one of those processes. So you've got that, it's the culling guy, and now we've got the other officer who says, I do, I happen to know his voice, I do know who was speaking on those. Now, a jury may not believe that, but that's not the question. The question is, could a jury conceivably believe that? Isn't it? Is it a prima facie case? Could a juror reach that conclusion? Ultimately, you could put in all the evidence in the world about what a lousy job the officers did, etc., but that all goes to the jury, and the jury then has to decide it. We're only talking prima facie case, threshold question, can it be admitted at all, right? Well, the standard, it seems to me that the standard that you're talking about is the straightforward standard under 901 for the admissibility of a voice ID. And what I'm talking about is the constitutional standard where you have a suggestive ID, and I think if you evaluate the evidence based on the court's, how the court assessed the admissibility evidence, then you're sort of faced with a slightly different analysis than what you're talking about. And that, the problem there, I view as, one, is it's suggestive, I think that's a legal question that the court decides, and my understanding of the case law is that the jury does have that opportunity to decide reliability, and it's possibly conceivable that they could make that determination, but I think the reliability evidence is weak. If you look at the reliability evidence here, you're based, the district court said, obviously I'm not, I can't do this on Strobeck alone, I can't do it based on that calling of the person who called the tapes. Then he turns to Kelly, and he says, you know, I think it's important that he ID'd the voice, and more importantly, in the court's words, he said, more importantly, the content of the calls. But as I view the bigger factors, the content of the calls is not relevant in that analysis. I'll concede that it is relevant, the content of the calls is relevant in a straightforward 901 analysis, but when you're into the constitutional standard, I don't think it's relevant. And then, what's standing, what's left, then, is his identification of the voice, and that evidence is not very strong at all. I don't think it's strong enough to overcome the suggestive ID, because he says the voice is distinctive. He can't say in any way why it's distinctive, other than the fact that it's hard, it's easy to distinguish. He says that he talks, that the person on the tapes talks like he was, you know, he's from a gang, or he grew up on the streets. That's certainly not a unique voice identifier, and that he uses the phrase, you know what I'm saying, and that's obviously not unique to Howard. Kelly says, you know, a lot, and also Meathead on the tapes says, you know. It may not be unique, but Kelly says, you know, it's unique the way this guy does it. He's like one of those people who uses certain adjectives, he uses certain words and adjectives and a verb and a noun, and every time he talks, he's got a you know. In fact, I noticed that the officer sort of had a speak pattern, like he'd say two words and he'd say, you know, and he'd say three more words and he'd say, you know. And a lot of people say, you know, but not very many people use it all the time like that. Well, Meathead And he said, this guy is unique the way he uses it. Didn't he say that? I just, I'm not sure that he can say that it's very unique when you have him saying it, you have Meathead saying it repeatedly, you know, you know what I'm saying, and it's like saying that a teenager uses the phrase like, well, you know, a lot of teenagers or a lot of people uses the phrase like, repeatedly, repeatedly, and that's just not a, that's not something that really describes the voice. It may identify, as you're indicating, Judge Fernandes, that there is a sort of speech pattern, but I actually don't think that Kelly's testimony on that point is very convincing at all. And I certainly don't think that that, you can sort of point to that as strong enough in this case to overcome what is a very, very suggestive ID process. Again, he's, it's really like that one-on-one photo ID where you say, here's a picture of the guy we think did it, and here's his name at the bottom. And then remember that Kelly says he spent two to three weeks trying to find when that actually happened, how long after his encounters with the defendant that was. So if you have this tape, and you're told this is the person, and then you invest two to three weeks of your life listening to those tapes, that suggestive power, I don't think you can overcome it, because that just cements in your mind and gives you a commitment to this person. The person I think is on these tapes is that person. And then I think it's really hard to even go back. I gather all these problems with Kelly's testimony were brought out in cross-examination. Are you asking where they're at? Yes. I think it's cross-examined, wasn't it, about what he heard and when he heard it and how long he had listened to him and how many times he had listened to the tape and all of that? Yeah, and I don't think Wasn't the jury instructed that they could, that it was up to them to decide whether or not that was Howard's voice on the recording? Instruction is in the record, and I cited to it. But you also have the government saying repeatedly all throughout the case, and especially if you look at that closing argument, I mean, this is really the big selling point, this is Howard, this is Howard, this is Howard. I think by the time the jury sees that instruction, I'm not sure that they can really decide for themselves that this is Howard, because it's been really plugged to them repeatedly that it's him. So with that, I think I'll reserve the remainder of my time. Thanks. Good morning. May it please the Court. My name is Karen Kenny. I'm Assistant United States Attorney in the District of Nevada, and I actually tried this case before the District Court. The Defense Council is asking this Court to reverse and remand, and they base their argument upon four points. And I'm just going to briefly touch on each of them here, and argue to this panel that there is nothing, absolutely nothing that's been raised that requires reversal and or remand. First, going out of order from the defendant's brief, but first I speak about the jury selection. And they admit, they concede in their brief that they don't have discriminatory intent. So that's not at issue. That doesn't trigger reversal. Next, they spoke about the attempt law in the State of Nevada. And obviously this brief was submitted, I believe, early to late March. In May 14th, the Ninth Circuit issued the opinion of the United States v. Sarbia, in which was on point and answered the question in the sense that the case holding was that the attempt law in the State of Nevada is consistent with the federal requirement of substantial step or overt act. So that's no longer an issue, and that does not require reversal. That leaves two. One, the third one raised by the defendant was the issue of the lay witness. Again, speaking again about testimony from Kelly. And as the government argued in its brief, first of all, there was no objection made. And then the standard is for abuse of discretion. So the issue becomes that Judge Proe abused his discretion in allowing Kelly to speak to certain terms. And as argued in my brief, 702 does not apply, simply because the specialized knowledge, which is where it would come under 702, is not really applicable to this case because it's a felon in possession. It's not a gang case. It's not an archives case. That is something that is more applicable to someone with specialized knowledge. This is an officer talking about slang. So even if it was 702 should have applied, any harm would be, any error would be harmless because he was qualified to do so. This is an officer with over 14 years in the police department and worked in the gun unit. Going back to 701, which is the lawyer. You're saying there would be no plain error, ultimately, even if it were error. Correct, sir. Because it's not harmful in the long run? That is correct. Yes, sir. And that is because the evidence against this defendant was overwhelming. Well, I'm thinking more about the officer. Are you saying that it's because the evidence was overwhelming or are you saying because there was enough evidence to indicate that the officer was an expert, probably anyway, even though he wasn't qualified as an expert? Thank you for clarifying. I'm saying the second, sir. That in addition, I believe this court also had an opinion, United States v. Mendoza, in which an Air Force captain, a plane captain, was allowed to give testimony. And the same argument was raised because he wasn't certified as an expert. And in the Mendoza decision, the court held that the harmless, any error was harmless, given the weight of the evidence and the fact that the captain could have qualified as an expert. It found that those two conditions found that it was proper. Under 701, Kelly surely was allowed to give lay witness testimony because it was based upon his opinion, was based upon his listening to the tapes. And moreover, it was helpful to the jury in making an ultimate decision of fact. That is, what he was asked to explain was what does blue card mean? That's definitely tied into the issue of the gun possession. What does a strap mean? What does a G mean? What does a clean gun mean? All of those things I think were proper and the judge did not abuse his discretion in allowing that to come in. Finally, the issue of tapes, as was brought up by the defendant under, I would argue to this court that under 901 these tapes were admissible, as Judge Fernandez said, under the prima facie case was made by the government. Moreover, the government properly was allowed to bring in the tapes under 901A for testimony of a witness with knowledge, which was Kelly. 901 subsection 4, which is distinctive characteristics. These tapes had distinctive characteristics in the tapes. Howard spoke about the exact outfit he was wearing, what happened, what was the range of events. 901-5 speaks about the recording. And the case law is very clear. It is a minimal, minimal, in fact, it is stated that it is a minimal familiarity is acceptable. All that is required is that the hearer has listened to the voice at some point and is able to connect it with that speaker. In fact, Did Kelly identify any of the conversations on the tape as not being the defendant? No, Your Honor. So he was given a tape with an understanding that the tape contained the conversations called out as being Howard's conversation. Actually, no, sir. There is something suggestive about that. Could you comment on the argument by the defendant that this is the equivalent of a one-photo display? Yes, Your Honor. I think that the argument by the defendant has nothing in common, can be easily distinguished. First of all, my going over the testimony, Your Honor, I noted that Strobach, his testimony on the stand in front of Judge Proulx was, quote, I ID'd the phone number. That was Strobach's quote. It has to be clear that he is not identifying Howard's voice. He even said to the court, I don't know the man's voice. I can't identify it. What I'm identifying is the phone number. So therefore, the suggestiveness Is that what he told Kelly? That's what he told the court. But what was Kelly's understanding when he got the tape? Kelly's understanding was that Strobach had said to him, the day that the defendant was arrested, Kelly had gone to Strobach and said to him, this is defendant's name. His name is Howard. He's in this specific location, what they call a pod. Can you please track his calls? Now, Strobach at that point had never heard Howard's voice, didn't know anything about it, but he tracked a telephone number. And then he went to Kelly and said, sir, here it is. These are the numbers I tracked. Now, there's no argument whatsoever to support that it's suggestible, Your Honor, simply because suggestibility is, and actually under Neal versus Biggers, the reliability factors. If you first find there's suggestive behavior, which I argued there is none, but given that there is suggestive behavior, then the next step in the analysis is under the totality of circumstances, as Biggers requires us to look at. And the totality of circumstances where there's so much, where the suggestion is so inherent as to make it unreliable. And therein, the government suggests that there is a number of factors which go to reliability. First of all, Howard identifies himself six times, according to Kelly's record. Number two, Howard speaks about meeting with Kelly. He talks about the detective coming and discussing specifically the issue of the car. Number three, the reliability is Kelly listened to Howard for, I guess it was 90 calls over a three-week period. And that was within the time frame of when he had met with him. Kelly's personally met with Howard over four times, Your Honor, from 45 minutes up to an hour. And the argument that somehow the government was able to brainwash, if you will, the jury by saying it was Howard, well, I would just argue what was the government to refer to? Mr. X? I mean, that's proper argument for the government to refer to as Mr. Howard. So if the court has no further questions, that is the conclusion of my argument. But I ask this court to affirm the district court's decision. Thank you. Thank you, gentlemen. The due process violation happens when there's the likelihood of misidentification from the ID process. Now, I think the hardest question in this case, I think it's clearly suggestive. And I'm happy to refer the court to the sites in the record that show that Kevin Strobeck says, you know, get me, find some, he believed, find me some calls that are related to Howard. That's on ER 181. And that, then when he gives the tapes back to Kelly, he says, I believe these are Howard. That's on ER 193. The most troubling question, though, is how relevant is the content of the tapes, I think. Because there, that's where I believe you have this division between 901 standard and the Biggers factors. Content is relevant under 901. If you look at those Biggers factors, they go to the capacity of the witness to identify, to observe in an eyewitness case. To hear and identify a voice in an earwitness case. And content in those, in that Biggers analysis is not one of the factors. So it really goes to his ability to identify the voice. And in this case, that reliability evidence is not strong enough to overcome what is a very, very suggestive process. I just want to say that I think the error is, harmless error beyond a reasonable doubt. And when you look at what, this was the feature item, the centerpieces of the government's case. Without these tapes, it's a totally different case and the evidence is much more shaky. Thank you very much. Thank you very much for your argument. I appreciate it. The next case on the calendar is United States v. Ruffley. Thank you very much. May it please the court. Good morning, your honors. Good morning.
judges: Fernandez, Paez, Clifton